THOMAS CONNELLY, ESQUIRE
Thomas P. Connelly, Jr.
NJ Atty. No. 012562005
2090 Marlton Pike East
Cherry Hill, NJ 08003
856.521.3771 (office)
856.624.3923 (fax)
tpc@attorneytpc.com

FILED ELECTRONICALLY
JURY TRIAL DEMANDED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LORRAINE LEMON, individually, and on behalf of the ESTATE of LYNETTE SMITH, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | HONORABLE NOEL L. HILLMAN United States District Judge |
| THE UNITED STATES OF AMERICA, COMMUNITY HEALTH CARE, INC., d/b/a COMPLETE HEALTH CARE NETWORK, TRI COUNTY MEDICINE, INC., HASMUKHBHAI PATEL, M.D., RAGHURAJ TOMAR, M.D., KIDNEY AND HYPERTENSION SPECIALISTS, P.A., ELIS PRIORI, M.D. and NAEEM AMIN, M.D., | : : : : : : : : : : : : | Civil Action No. 14-7247 (NLH)(KMW)  AMENDED COMPLAINT AND JURY DEMAND |
| Defendants. | : | |

## AMENDED COMPLAINT AND JURY DEMAND

Plaintiffs, Estate of Lynette Smith by Administratrix, Lorraine Lemon, and Lorraine Lemon, in her individual capacity, by way of Complaint against Defendants, do say:

## INTRODUCTION

1.    Plaintiffs bring this wrongful death and survivorship negligence action against the defendants, Decedent Lynette Smith's treating physicians, for damages resulting from the defendants' failure to diagnose and treat a ureteral restriction caused by a foreign body placed during a 2003 hysterectomy, which led to renal insufficiency and failure in Smith, and ultimately, Smith's death on January 20, 2014 due to complications therefrom.

2.    Dr. Joseph P. Riley, an obstetrician/gynecologist, performed a September 9, 2003 hysterectomy on Lynette Smith and released her from the operating room with a metallic surgical suture or clamp remaining in Smith's body.  See September 2, 2014 Report and Curriculum Vitae of James Ingaglio, MD, MMM FACOG, FACS, Attached **Exhibit "A"**.

3.    This error caused Smith to suffer urinary retention and ultimately complete failure of her left kidney.  Ibid.

4.    Subsequent to the hysterectomy, Smith sought medical treatment from her primary care physicians, Defendants Community Health Care, Inc. (hereinafter "CHC"), Tri County Medicine, Inc. (hereinafter "TCM"), Hasmukhbhai Patel, M.D. (hereinafter "Patel") and Raghuraj Tomar, M.D. (hereinafter "Tomar"), for complaints of abdominal pain, nausea, constipation and thirst.

5.    Despite Smith's symptoms, which were indicative of renal insufficiency and failure, Defendants CHC, TCM, Patel and Tomar

failed to immediately refer Smith to a nephrologist, and failed to conduct or review diagnostic tests which would have revealed these dangerous conditions.

6.   In February of 2008, Smith presented to the emergency room at South Jersey Healthcare with her same complaints of abdominal pain, nausea, constipation and thirst, and a CT scan was performed for suspected renal failure on February 8, 2008.

7.   The impression of this report stated: "[m]arked left-sided hydroureteronephrosis; distal ureter appears to be obstructed by curvilinear suture material.  No other obvious cause for ureteral obstruction on this CT study." **Exhibit "A"**.

8.   Smith was then referred to Defendant Kidney and Hypertension Specialists, P.A. (hereinafter "KHS"), where defendants Elis Priori, M.D. (hereinafter "Priori"), and Naeem Amin, M.D. (hereinafter "Amin") were employed, and although the surgical clamp was identified in the vicinity of Smith's left ureter, Smith was told that her failing left kidney was the result of diabetes, urinary retention, or high blood pressure.

9.   However, in early 2011, Smith was seen at South Jersey Healthcare's emergency room, at which time an unknown physician advised her that her kidney failure may have been due to the surgical clamp, and not solely due to diabetes or high blood pressure.

10.  Thus, Defendants herein, Smith's treating physicians, failed to order diagnostic tests which would have indicated the obstruction of Smith's left ureter and the fact and cause of her kidney failure.

11.  Defendants also failed to timely and appropriately act on the February 8, 2008 CT scan showing the obstruction of Smith's left ureter, by surgically removing the obstruction or referring Smith to a surgeon for same.

12.  These omissions led to the progressive atrophy of the left kidney and ultimately to a nephrectomy, or total removal of the left kidney, in 2012.  <u>See</u> **Exhibit "A"**.

13.  On January 20, 2014, Lynette Smith died due to complications of kidney failure.

### <u>JURISDICTION AND VENUE</u>

14.  This Court has exercised/retained removal jurisdiction pursuant to 28 U.S.C. §§ 1452 and 1442(a).  <u>See</u> <u>Smith v. Riley</u>, 1:14-cv-07247-NLH-KMW, slip op., Document No. 23 at 23 (D.N.J. July 31, 2015).

15.  This Court has exercised/retained jurisdiction "on the grounds that the United States is a defendant and that the federal district courts 'have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or

personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" Smith v. Riley, 1:14-cv-07247-NLH-KMW, slip op., Document No. 23 at 6 (D.N.J. July 31, 2015) (quoting 28 U.S.C. § 1346(b)(1)).

16. This Court has exercised/retained supplemental jurisdiction over Plaintiff's state law claims against the non-federal defendants pursuant to 28 U.S.C. § 1367. Smith v. Riley, 1:14-cv-07247-NLH-KMW, slip op., Document No. 23 at 23 (D.N.J. July 31, 2015).

17. Venue is proper in this judicial district because this district embraces the place where the state court action is pending, see 28 U.S.C. § 1452, and also pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391, because the defendants are subject to personal jurisdiction in this judicial district and/or reside in this district.

## THE PARTIES

18. Plaintiff, Lorraine Lemon is the natural mother of the decedent, Lynette Smith, and Administratrix of Plaintiff, Estate

of Lynette Smith.  Letters of administration were granted on March 7, 2014 by the Surrogate of Cumberland County, State of New Jersey.

19.  Plaintiff, Lorraine Lemon is an adult citizen of the State of New Jersey residing at 3131 Lexington Avenue, Vineland, New Jersey 08332.

20.  Defendant, United States of America (hereinafter "United States") is a federal republic represented by the Attorney General of the United States, and, upon information and belief, at times relevant and material hereto, employed certain defendants herein, which will be described in greater detail below.

21.  Defendant Community Health Care, Inc., d/b/a Complete Health Care Network (hereinafter "CHC") is a New Jersey corporation, with a business address of 53 South Laurel Street Bridgeton, NJ 08302, which was at all times relevant and material hereto, was engaged in the practice of medicine under the laws of the State of New Jersey, with an office located at said business address.

22.  Upon information and belief, at all times relevant and material hereto, Defendant CHC was acting within the scope of its employment as an employee of the United States.

23.  Defendant, Tri County Medicine, Inc. (hereinafter "TCM") is a New Jersey corporation, with a business address of 49 South State Street, Vineland, New Jersey, 08360, and was at all times relevant hereto, engaged in the practice of medicine under the

laws of the State of New Jersey, with a medical facility located at its said business address.

24.   Upon information and belief, at all times relevant and material hereto, Defendant TCM was acting within the scope of its employment as an employee of the United States.

25.   Defendant Hasmukhbhai Patel, M.D. (hereinafter "Patel"), is an adult citizen of the State of New Jersey, who at all times relevant and material hereto, was a physician duly licensed to practice medicine under the laws of the State of New Jersey, maintaining an office for the practice of his profession at 49 S. State Street, Vineland, New Jersey, 08360.

26.   At all times relevant and material hereto, Defendant Patel acted individually, and/or as an agent, servant, and/or employee of Defendant CHC and/or TCM, and, upon information and belief, within the scope of his employment as an employee of the United States.

27.   At all times relevant and material hereto, Defendant Patel professed and held himself out to the public and to the Lynette Smith as being skilled, careful and diligent in the practice of his profession as physician. Specifically, defendant held himself out as one who practiced specially in the area of general practice and/or family medicine.

28.   Defendant Raghuraj Tomar, M.D. (hereinafter "Tomar"), is an adult citizen of the State of New Jersey, and was at all times

relevant and material hereto, a physician duly licensed to practice medicine under the law of the State of New Jersey, maintaining an office for the practice of his profession located at 49 South State Street Vineland, New Jersey, 08360.

29.  At all times relevant and material hereto, Defendant Tomar acted individually, and/or as an agent, servant, and/or employee of Defendant CHC and/or TCM, and, upon information and belief, within the scope of his employment as an employee of the United States.

30.  At all times relevant and material hereto, Defendant Tomar professed and held himself out to the public and to Lynette Smith as being skilled, careful and diligent in the practice of his profession as physician. Specifically, defendant held himself out as one who practiced specially in the area of general practice and/or family medicine.

31.  By reason of the relationship between Defendant CHS and Defendants Patel and Tomar, Defendant CHS is liable for the negligent acts, omissions and/or false and/or fraudulent representations of Defendants Patel and Tomar.

32.  By reason of the relationship between Defendant TCM and Defendant Tomar, Defendant TCM is liable for the negligent acts, omissions and/or false and/or fraudulent representations of Defendant Tomar.

33.  Defendant, Kidney and Hypertension Specialists, P.A. (hereinafter "KHS") is a New Jersey Professional Association, with a business address of 215 Laurel Heights Drive, Bridgeton, New Jersey, 08302, and was at all times relevant and material hereto, engaged in the practice of medicine under the laws of the State of New Jersey, with an office located at its said business address.

34.  Defendant Elis Priori, M.D. (hereinafter "Priori") is an adult citizen of the State of New Jersey, who at all times relevant and material hereto, was a physician duly licensed to practice medicine under the law of the State of New Jersey, maintaining an office for the practice of her profession at 215 Laurel Heights Drive, Bridgeton, New Jersey, 08302.

35.  At all times relevant and material hereto, Defendant Priori acted individually, and/or as an agent, servant, and/or employee of Defendant KHS.

36.  At all times relevant and material hereto, Defendant Priori professed and held herself out to the public and to Lynette Smith as being skilled, careful and diligent in the practice of her profession as physician. Specifically, defendant held herself out as one who practiced specially in the area of nephrology.

37.  Defendant Naeem Amin, M.D. (hereinafter "Amin"), is an adult citizen of the State of New Jersey, who at all times relevant and material hereto, was a physician duly licensed to practice medicine under the law of the State of New Jersey, maintaining an

office for the practice of his profession at 215 Laurel Heights Drive, Bridgeton, New Jersey, 08302.

38.   At all times relevant and material hereto, Defendant Amin acted individually, and/or as an agent, servant, and/or employee of defendant KHS.

39.   At all times relevant and material hereto, Defendant Amin professed and held himself out to the public and to Lynette Smith as being skilled, careful and diligent in the practice of his profession as physician. Specifically, Amin held himself out as one who practiced specially in the area of nephrology.

40.   By reason of the relationship between Defendant KHS and Defendants Priori and Amin, Defendant KHS is liable for the negligent acts, omissions and/or false and/or fraudulent representations of Defendants Priori and Amin.

## FIRST CAUSE OF ACTION

**PROFESSIONAL LIABILITY ACTION, MEDICAL MALPRACTICE RESULTING IN WRONGFUL DEATH, N.J.S.A. 2A:31-1, ET SEQ.**

### COUNT I

**PLAINTIFF, ESTATE OF LYNETTE SMITH AGAINST ALL DEFENDANTS – WRONGFUL DEATH, FAILURE TO USE DUE CARE OR SKILL IN TREATING AND DIAGNOSING ILLNESS**

41.   This Count is brought by Plaintiff, Estate of Lynette Smith, on its own behalf, against Defendants, United States of America (hereinafter "United States"), Community Health Care, Inc., d/b/a Complete Health Care Network, individually and as an

employee of Defendant, United States (hereinafter "CHC"), Tri County Medicine, Inc., individually and as an employee of Defendant, United States (hereinafter "TCM"), Hasmukhbhai Patel, M.D., individually and as an employee of Defendant, United States (hereinafter "Patel"), Raghuraj Tomar, M.D., individually and as an employee of Defendant, United States (hereinafter "Tomar"), Kidney and Hypertension Specialists, P.A. (hereinafter "KHS"), Elis Priori, M.D. (hereinafter "Priori") and Naeem Amin, M.D. (hereinafter "Amin") (the "Count I Defendants").

42. Plaintiff hereby incorporates by reference each and every one of the foregoing paragraphs as if it were fully set forth herein.

43. On or about September 25, 2003, subsequent to her hysterectomy surgery, Lynette Smith returned to gynecological surgeon Dr. Joseph Riley's office complaining of abdominal pain, and was told that this symptom was normal, and to be ignored.

44. On or about November 13, 2003, Lynette Smith returned to Riley's office, again complaining of abdominal pain, and was once again told that this symptom was normal, and was to be ignored.

45. Riley recorded Smith's complaints in Smith's medical chart.

46. Lynette Smith employed Defendant CHC, including but not limited to defendants Patel and Tomar, as her primary care

physicians from the date of her 2003 hysterectomy through the date of the 2012 nephrectomy.

47. At numerous office visits to Defendant CHC and/or Defendants Patel and Tomar during this time frame, Lynette Smith was treated for persistent complaints of abdominal pain, nausea, constipation, and thirst.

48. Smith repeatedly complained of symptoms, including but not limited to extreme recurring nausea, vomiting, constipation, thirst, and abdominal pain, to various CHC agents and/or employees, including defendants Patel and Tomar.

49. Despite Lynette Smith's symptoms indicating renal insufficiency and/or failure, agents and/or employees of defendant CHC, including Patel and Tomar, failed to refer Lynette Smith to a kidney specialist and/or nephrologist, and also failed to refer Lynette Smith for diagnostic tests which would have revealed renal insufficiency, although ordinary skill and care would have revealed Smith's renal failure and/or insufficiency, and had ordinary care been exercised, Smith would have been timely diagnosed and treated.

50. In February of 2008, Lynette Smith presented to South Jersey Healthcare's Vineland, New Jersey emergency room, complaining of extreme, recurring nausea, vomiting, constipation, thirst, and abdominal pain.

51.  A CT scan was performed for suspected renal failure on February 8, 2008.

52.  The radiological impression was "[m]arked left-sided hydroureteronephrosis; distal ureter appears to be obstructed by curvilinear suture material.  No other obvious cause for ureteral obstruction on this CT study."  September 2, 2014 Report of Dr. James Ingaglio, MD, MMM FACOG, FACS, Attached **Exhibit "A"**.

53.  Smith was then referred to Defendant KHS, where Defendants Priori and Amin were employed, and although the surgical clamp was detected on her left side, Smith was told that her failing left kidney was the result of diabetes, hypertension, or urinary retention.

54.  Despite the fact that Lynette Smith's left kidney was impaired by a metallic surgical clamp detected at Lynette Smith's left ureter, no defendant physician herein informed Lynette Smith that her kidney failure may have been caused by the surgical clamp and/or suture identified in the February 8, 2008 CT scan.

55.  Subsequent to the 2003 hysterectomy, Lynette Smith employed the Count I Defendants, for compensation, as her physicians and/or surgeons, and relied upon them to treat and cure her of recurring nausea, vomiting, constipation, thirst, and abdominal pain, and for that purpose said defendants, as physicians and/or surgeons, undertook to attend and cure Lynette Smith.

56. The Count I Defendants carelessly, negligently, improperly, and unlawfully failed to timely and appropriately diagnose Lynette Smith's renal insufficiency and failed to adequately respond to Lynette Smith's persistent complaints of abdominal pain, nausea, vomiting, and constipation subsequent to her 2003 hysterectomy.

57. The Count I Defendants carelessly, negligently, improperly, and unlawfully failed to timely and appropriately diagnose Lynette Smith's renal insufficiency by way of failing to adequately and properly review Smith's medical chart with her other treating physicians and at other facilities, including but not limited to those with Dr. Riley and South Jersey Healthcare.

58. The Count I Defendants carelessly, negligently, improperly, and unlawfully failed to timely and appropriately secure radiologic and/or laboratory testing which would have revealed the impingement of the left ureter by the metallic surgical clamp/suture.

59. The Count I Defendants carelessly, negligently, improperly, and unlawfully failed to timely and appropriately secure radiologic and/or laboratory testing which would have revealed that Smith was in renal failure and/or a state of renal insufficiency.

60. The Count I Defendants carelessly, negligently, improperly, and unlawfully failed to timely and appropriately

respond to the indications of the impression of the CT scan performed on February 8, 2008, which stated: "[m]arked left-sided hydroureteronephrosis; distal ureter appears to be obstructed by curvilinear suture material.  No other obvious cause for ureteral obstruction on this CT study."  September 2, 2014 Report of Dr. James Ingaglio, MD, MMM FACOG, FACS, Attached **Exhibit "A"**.

61.  The Count I Defendants failed to intervene surgically and remove the obstruction or to refer Lynette Smith to a surgeon for such a procedure.

62.  On numerous occasions between 2003 and 2012, the Count I Defendants falsely and fraudulently represented to Lynette Smith that her renal insufficiency and/or failure was caused by diabetes, hypertension, and/or urinary retention alone, and Lynette Smith relied on these false and fraudulent representation to her detriment.

63.  The Count I Defendants acted fraudulently, carelessly, negligently, improperly, and unlawfully in failing to advise Lynette Smith that her renal impairment may have been the result of a metallic surgical clamp and/or suture left in her body following the 2003 hysterectomy.

64.  The Count I Defendants were negligent in endeavoring to cure Lynette Smith of her illness, while failing to exercise the degree of care and skill, or to possess the degree of knowledge ordinarily exercised or possessed by other physicians and surgeons

in the County of Cumberland and State of New Jersey, or like localities. Specifically, the Count I Defendants negligently:

a.   failed to timely and properly diagnose and treat Lynette Smith's renal failure and/or insufficiency;

b.   failed to timely and properly diagnose and treat Lynette Smith's renal failure and/or insufficiency by referring her to an appropriate specialist and/or for appropriate diagnostic testing;

c.   failed to timely and properly diagnose and treat Lynette Smith's renal failure and/or insufficiency by addressing the metallic surgical clamp or suture that led to Lynette Smith's renal impairment;

d.   failed to timely diagnose Lynette Smith's renal failure and/or insufficiency based on her persistent complaints of abdominal pain, nausea, vomiting, thirst, and/or constipation, from 2003-2008, and promptly refer her for diagnostic tests or to an appropriate specialist, which would have revealed said condition;

e.   failed to timely and appropriately respond to the indications of the impression of the CT scan performed on February 8, 2008, which stated: "[m]arked left-sided hydroureteronephrosis; distal ureter appears to be obstructed by curvilinear suture material. No other obvious cause for ureteral obstruction on this CT study." September 2, 2014 Report of Dr. James Ingaglio, MD, MMM FACOG, FACS, Attached **Exhibit "A"**.

65. Due to the negligence and false and fraudulent representations and omissions of the Count I Defendants as aforesaid, and as a proximate result thereof, Lynette Smith was unable to obtain prompt and proper medical care and treatment of

her renal impairment in its early stages, and her condition irreversibly worsened.

66. The Count I Defendants, in their treatment of Lynette Smith did personally and by and through their agents, servants and employees, negligently fail to exercise ordinary care, and otherwise failed to exercise the degree of care commonly exercised by other surgeons in like cases having regard to the existing state of knowledge in medicine and surgery in that they failed to timely and properly diagnose Smith's renal failure and insufficiency and its cause, despite overwhelming medical evidence of ureteral obstruction and renal failure, including but not limited to, Smith's persistent complaints of abdominal pain, nausea, vomiting, thirst, and/or constipation and the CT scan performed on February 8, 2008, which clearly showed a foreign body impinging on her left ureter.

67. As a direct and proximate result of the carelessness, negligence, and false and fraudulent representations and omissions of the Count I Defendants, Lynette Smith died on January 20, 2014.

68. Due to their aforesaid act and/or omissions, the Count I Defendants are liable to the Estate of Lynette Smith for the monetary contributions which Lynette Smith might reasonably have been expected to make to her survivors had she lived.

69. Due to their aforesaid acts and/or omissions, the Count I Defendants are liable to the Estate of Lynette Smith for (a)

loss of household services, (b) loss of financial support, (c) loss of companionship, (d) loss of guidance, and (e) loss of inheritance, (f) together with the hospital, medical, and funeral expenses incurred for the deceased.

70.  The aforesaid negligent acts and/or omissions of the Count I Defendants were reckless, wanton, and egregious, and in total disregard of Lynette Smith's health and welfare.

71.  Due to their aforesaid act and/or omissions, the Count I Defendants are liable to the Estate of Lynette Smith for punitive damages.

**WHEREFORE**, Plaintiff, Estate of Lynette Smith, requests judgment against the Count I Defendants for damages, together with attorney's fees, costs of suit, punitive damages, and such other and further relief as the court may deem proper.

<u>**SECOND CAUSE OF ACTION**</u>

**PROFESSIONAL LIABILITY ACTION, MEDICAL MALPRACTICE RESULTING IN SURVIVORSHIP, <u>N.J.S.A.</u> 2A:15-3**

<u>**COUNT II**</u>

**PLAINTIFF, ESTATE OF LYNETTE SMITH AGAINST ALL DEFENDANTS – SURVIVORSHIP, FAILURE TO USE DUE CARE OR SKILL IN TREATING AND DIAGNOSING ILLNESS RESULTING IN DEATH**

72.  This Count is brought by Plaintiff, Estate of Lynette Smith, on its own behalf, against Defendants, United States of America (hereinafter "United States"), Community Health Care,

Inc., d/b/a Complete Health Care Network, individually and as an employee of Defendant, United States (hereinafter "CHC"), Tri County Medicine, Inc., individually and as an employee of Defendant, United States (hereinafter "TCM"), Hasmukhbhai Patel, M.D., individually and as an employee of Defendant, United States (hereinafter "Patel"), Raghuraj Tomar, M.D., individually and as an employee of Defendant, United States (hereinafter "Tomar"), Kidney and Hypertension Specialists, P.A. (hereinafter "KHS"), Elis Priori, M.D. (hereinafter "Priori") and Naeem Amin, M.D. (hereinafter "Amin") (the "Count II Defendants").

73. Plaintiff hereby incorporates by reference each and every one of the foregoing paragraphs as if it were fully set forth herein.

74. On or about September 25, 2003, subsequent to her hysterectomy surgery, Lynette Smith returned to gynecological surgeon Dr. Joseph Riley's office complaining of abdominal pain, and was told that this symptom was normal, and to be ignored.

75. On or about November 13, 2003, Lynette Smith returned to Riley's office, again complaining of abdominal pain, and was once again told that this symptom was normal, and was to be ignored.

76. Riley recorded Smith's complaints in Smith's medical chart.

77. Lynette Smith employed Defendant CHC, including but not limited to defendants Patel and Tomar, as her primary care

physicians from the date of her 2003 hysterectomy through the date of the 2012 nephrectomy.

78.   At numerous office visits to Defendant CHC and/or Defendants Patel and Tomar during this time frame, Lynette Smith was treated for persistent complaints of abdominal pain, nausea, constipation, and thirst.

79.   Smith repeatedly complained of symptoms, including but not limited to extreme recurring nausea, vomiting, constipation, thirst, and abdominal pain, to various CHC agents and/or employees, including defendants Patel and Tomar.

80.   Despite Lynette Smith's symptoms indicating renal insufficiency and/or failure, agents and/or employees of defendant CHC, including Patel and Tomar, failed to refer Lynette Smith to a kidney specialist and/or nephrologist, and also failed to refer Lynette Smith for diagnostic tests which would have revealed renal insufficiency, although ordinary skill and care would have revealed Smith's renal failure and/or insufficiency, and had ordinary care been exercised, Smith would have been timely diagnosed and treated.

81.   In February of 2008, Lynette Smith presented to South Jersey Healthcare's Vineland, New Jersey emergency room, complaining of extreme, recurring nausea, vomiting, constipation, thirst, and abdominal pain.

82.  A CT scan was performed for suspected renal failure on February 8, 2008.

83.  The radiological impression was "[m]arked left-sided hydroureteronephrosis; distal ureter appears to be obstructed by curvilinear suture material.  No other obvious cause for ureteral obstruction on this CT study."  September 2, 2014 Report of Dr. James Ingaglio, MD, MMM FACOG, FACS, Attached **Exhibit "A"**.

84.  Smith was then referred to Defendant KHS, where Defendants Priori and Amin were employed, and although the surgical clamp was detected on her left side, Smith was told that her failing left kidney was the result of diabetes, hypertension, or urinary retention.

85.  Despite the fact that Lynette Smith's left kidney was impaired by a metallic surgical clamp detected at Lynette Smith's left ureter, no defendant physician herein informed Lynette Smith that her kidney failure may have been caused by the surgical clamp and/or suture identified in the February 8, 2008 CT scan.

86.  Subsequent to the 2003 hysterectomy, Lynette Smith employed the Count II Defendants, for compensation, as her physicians and/or surgeons, and relied upon them to treat and cure her of recurring nausea, vomiting, constipation, thirst, and abdominal pain, and for that purpose said defendants, as physicians and/or surgeons, undertook to attend and cure Lynette Smith.

87. The Count II Defendants carelessly, negligently, improperly, and unlawfully failed to timely and appropriately diagnose Lynette Smith's renal insufficiency and failed to adequately respond to Lynette Smith's persistent complaints of abdominal pain, nausea, vomiting, and constipation subsequent to her 2003 hysterectomy.

88. The Count II Defendants carelessly, negligently, improperly, and unlawfully failed to timely and appropriately diagnose Lynette Smith's renal insufficiency by way of failing to adequately and properly review Smith's medical chart with her other treating physicians and at other facilities, including but not limited to those with Dr. Riley and South Jersey Healthcare.

89. The Count II Defendants carelessly, negligently, improperly, and unlawfully failed to timely and appropriately secure radiologic and/or laboratory testing which would have revealed the impingement of the left ureter by the metallic surgical clamp/suture.

90. The Count II Defendants carelessly, negligently, improperly, and unlawfully failed to timely and appropriately secure radiologic and/or laboratory testing which would have revealed that Smith was in renal failure and/or a state of renal insufficiency.

91. The Count II Defendants carelessly, negligently, improperly, and unlawfully failed to timely and appropriately

respond to the indications of the impression of the CT scan performed on February 8, 2008, which stated: "[m]arked left-sided hydroureteronephrosis; distal ureter appears to be obstructed by curvilinear suture material.  No other obvious cause for ureteral obstruction on this CT study."  September 2, 2014 Report of Dr. James Ingaglio, MD, MMM FACOG, FACS, Attached **Exhibit "A"**.

92.  The Count II Defendants failed to intervene surgically and remove the obstruction or to refer Lynette Smith to a surgeon for such a procedure.

93.  On numerous occasions between 2003 and 2012, the Count II Defendants falsely and fraudulently represented to Lynette Smith that her renal insufficiency and/or failure was caused by diabetes, hypertension, and/or urinary retention alone, and Lynette Smith relied on these false and fraudulent representation to her detriment.

94.  The Count II Defendants acted fraudulently, carelessly, negligently, improperly, and unlawfully in failing to advise Lynette Smith that her renal impairment may have been the result of a metallic surgical clamp and/or suture left in her body following the 2003 hysterectomy.

95.  The Count II Defendants were negligent in endeavoring to cure Lynette Smith of her illness, while failing to exercise the degree of care and skill, or to possess the degree of knowledge ordinarily exercised or possessed by other physicians and surgeons

in the County of Cumberland and State of New Jersey, or like localities. Specifically, the Count I Defendants negligently:

 a. failed to timely and properly diagnose and treat Lynette Smith's renal failure and/or insufficiency;

 b. failed to timely and properly diagnose and treat Lynette Smith's renal failure and/or insufficiency by referring her to an appropriate specialist and/or for appropriate diagnostic testing;

 c. failed to timely and properly diagnose and treat Lynette Smith's renal failure and/or insufficiency by addressing the metallic surgical clamp or suture that led to Lynette Smith's renal impairment;

 d. failed to timely diagnose Lynette Smith's renal failure and/or insufficiency based on her persistent complaints of abdominal pain, nausea, vomiting, thirst, and/or constipation, from 2003-2008, and promptly refer her for diagnostic tests or to an appropriate specialist, which would have revealed said condition;

 e. failed to timely and appropriately respond to the indications of the impression of the CT scan performed on February 8, 2008, which stated: "[m]arked left-sided hydroureteronephrosis; distal ureter appears to be obstructed by curvilinear suture material. No other obvious cause for ureteral obstruction on this CT study." September 2, 2014 Report of Dr. James Ingaglio, MD, MMM FACOG, FACS, Attached **Exhibit "A"**.

 96. Due to the negligence and false and fraudulent representations and omissions of the Count II Defendants as aforesaid, and as a proximate result thereof, Lynette Smith was unable to obtain prompt and proper medical care and treatment of

her renal impairment in its early stages, and her condition irreversibly worsened.

97. The Count II Defendants, in their treatment of Lynette Smith did personally and by and through their agents, servants and employees, negligently fail to exercise ordinary care, and otherwise failed to exercise the degree of care commonly exercised by other surgeons in like cases having regard to the existing state of knowledge in medicine and surgery in that they failed to timely and properly diagnose Smith's renal failure and insufficiency and its cause, despite overwhelming medical evidence of ureteral obstruction and renal failure, including but not limited to, Smith's persistent complaints of abdominal pain, nausea, vomiting, thirst, and/or constipation and the CT scan performed on February 8, 2008, which clearly showed a foreign body impinging on her left ureter.

98. As a direct and proximate result of the carelessness, negligence, and false and fraudulent representations and omissions of the Count II Defendants, Lynette Smith died on January 20, 2014.

99. As a direct and proximate result of the negligent medical treatment by the Count II Defendants, Lynette Smith lost all functioning of her left kidney and was injured in her health and activity, suffered great mental anguish and physical pain, was weakened in body, and was obliged to, and did spend substantial sums of money in endeavoring to be cured of her disease, which was

prolonged and increased by defendant's unskillful and improper conduct, all to Lynette Smith's great monetary and emotional damage.

100. Lynette Smith's death was proximately caused by the aforesaid wrongful acts and/or omissions of the Count II Defendants and said acts and/or omissions would have entitled Lynette Smith to maintain an action for damages resulting from the injury.

101. Due to their aforesaid act and/or omissions, the Count II Defendants are liable to the Estate of Lynette Smith for the decedent's (a) pain and suffering between the time of her injury and the time of her death, (b) disability and impairment, (c) loss of earning capacity, (d) out-of-pocket and hospital and medical expenses, and (e) loss of the enjoyment of life.

102. The aforesaid negligent acts and/or omissions of the Count II Defendants were reckless, wanton, and egregious, and in total disregard of Lynette Smith's health and welfare.

103. Due to their aforesaid acts and/or omissions, the Count II Defendants are liable to the Estate of Lynette Smith for punitive damages.

**WHEREFORE**, Plaintiff, Estate of Lynette Smith on behalf of decedent, Lynette Smith, requests judgment against the Count II Defendants for damages, together with attorney's fees, costs of

suit, punitive damages, and such other and further relief as the court may deem proper.

### THIRD CAUSE OF ACTION

**NEGLIGENCE — EMOTIONAL DISTRESS FROM WITNESSING SERIOUS INJURY TO AN INTIMATE FAMILY MEMBER**

### COUNT III

**PLAINTIFF, LORRAINE LEMON AGAINST ALL DEFENDANTS – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

104. This Count is brought by Plaintiff, Lorraine Lemon, in her individual capacity, against Defendants, United States of America (hereinafter "United States"), Community Health Care, Inc., d/b/a Complete Health Care Network, individually and as an employee of Defendant, United States (hereinafter "CHC"), Tri County Medicine, Inc., individually and as an employee of Defendant, United States (hereinafter "TCM"), Hasmukhbhai Patel, M.D., individually and as an employee of Defendant, United States (hereinafter "Patel"), Raghuraj Tomar, M.D., individually and as an employee of Defendant, United States (hereinafter "Tomar"), Kidney and Hypertension Specialists, P.A. (hereinafter "KHS"), Elis Priori, M.D. (hereinafter "Priori") and Naeem Amin, M.D. (hereinafter "Amin") (the "Count III Defendants").

105. Plaintiff hereby incorporates by reference each and every one of the foregoing paragraphs as if it were fully set forth herein.

106. Plaintiff Lorraine Lemon is Lynette Smith's natural mother, and acted as Smith's primary caretaker during Smith's slow and painful death from kidney failure.

107. The Count III Defendants' aforesaid negligent medical treatment of Lynette Smith proximately caused Lynette Smith to suffer serious bodily injury, and ultimately, death due to complications of renal failure on January 20, 2014.

108. Plaintiff Lemon, as Smith's primary caretaker, was actually present when Smith was informed in 2011 that a foreign object left after a procedure performed eight (8) years earlier was likely impinging on her ureter and causing her renal failure— at a time when the necrosis of her kidney was already permanent and irreversible.

109. Plaintiff Lemon was present and witnessed Lynette Smith's emotional and physical suffering due to end-stage renal disease, having visited her regularly in hospice while Lynette was undergoing dialysis.

110. Plaintiff Lemon experienced severe emotional distress as a result of the direct observation of the aforesaid events.

**WHEREFORE**, Plaintiff, Lorraine Lemon requests judgment against the Count III Defendants for damages, together with attorney's fees, costs of suit, punitive damages, and such other and further relief as the court may deem proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all claims and issues so triable.

Respectfully submitted,

**THOMAS CONNELLY, ESQUIRE**

By:  **THOMAS P. CONNELLY, JR.**
tpc@attorneytpc.com
*Attorney for Plaintiffs*

**Dated:** October 14, 2015

**Exhibit "A"**

Thomas Connelly, Esquire
2090 Marlton Pike East
Cherry Hill, NJ 08003

**RE:  Estate of Lynette Smith**

September 2, 2014

Dear Mr. Connelly:

Thank you for giving me the opportunity to review the medical records for Lynette Smith.  I have reviewed the following:

- Bayada Home Healthcare
- Complete Health Network
- Dr. Birgit Toome
- Eagleview Health & Rehabilitation
- Genesis Healthcare
- Internal Medicine Associates
- Our Lady of Lourdes Medical Center
- Complete Care
- Cooper University Hospital
- Dr. Priori
- Kidney & Hypertension Specialists
- Radiology Reports from South Jersey Healthcare
- South Jersey Healthcare
- US Renal Care
- Death Certificate

Qualifications

I am a medical doctor and am licensed to practice medicine in the states of California and Florida. I am board-certified in Obstetrics and Gynecology, a Fellow of the American College of Obstetricians and Gynecologists, a Fellow of the American College of Surgeons and am familiar with the standard of care required of an OB/GYN.  The facts set forth in this declaration are personally known to me based upon my review of the materials provided to me, and if called upon as a witness, I could and would competently testify hereto. I have never had my opinion disqualified by any court in any jurisdiction.  I have attached a copy of my CV.

On September 9, 2003, Lynette Smith had a total abdominal hysterectomy and a bilateral salpingo-oophorectomy for menometrorrhagia and chronic pelvic pain. The procedure was performed by Defendant, Joseph P. Riley, D.O.  During the procedure, Dr. Riley used 30-2.5 endo-GIA's to transect the infundibular pelvic

ligament and also the uterine arteries down to the level of the uterosacral ligaments per his operative note.  This technique ultimately led to a partial obstruction of the left ureter as noted on a 2/8/2008 CT scan.  The impression of this report stated:  "Marked left-sided hydroureteronephrosis; distal ureter appears to be obstructed by curvilinear suture material.  No other obvious cause for ureteral obstruction on this CT study."

On or about September 25, 2003, the patient complained of abdominal pain and was told that the symptom was normal.  On or about November 13, 2003, the patient continued to complain of abdominal pain and, once again, was told that this was normal.  Had a CT scan of the abdomen/pelvis been performed at or around this time, it would have easily discovered the left ureter was being kinked by the staple, thereby limiting the sequela that this patient endured.

The impingement of the left ureter ultimately led to a nephrectomy of the left kidney.  According to the Death Certificate, Lynette Smith died on January 20, 2014, due to "end stage renal disease".

Dr. Riley, in his treatment of Lynette Smith, breached the standard of care, and his duty to exercise the degree of care, knowledge and skill ordinarily possessed and exercised by an average practicing gynecologist performing hysterectomies, by failing to protect the ureters and by not promptly recognizing the ureteral injury caused by the endo-GIA.  Once again, had this been done, Lynette Smith would not have endured continuing pain, and the renal issues which ultimately caused her death.

The foregoing opinion is rendered to a reasonable degree of medical certainty.  I reserve the right to amend my opinion should more information become available.

Sincerely,

James Ingaglio, MD, MMM, FACOG, FACS

**James J. Ingaglio, M.D., MMM, FACOG, FACS**

**Place of Birth:** Brooklyn, NY

**Date of Birth:** August 24, 1965

**Address:** 7214 Birdview Avenue
              Malibu, CA   90265

**Home:** 310-457-8797
**Cell:** 310-902-6919
 **E-mail:** jingaglio@gmail.com

**Education:**

College:        The College of New Jersey
                Bachelor of Arts: 12/1987
                Psychology and Accounting

Medical School:   University of Medicine and Dentistry of New Jersey
                  Robert Wood Johnson Medical School
                  Medical Doctor: 5/1996

Graduate School:   University of Southern California
                   Marshall School of Business
                   Master of Medical Management: 5/2009

**Residency:**

7/1/96-8/3/97:      PGY 1 OB/GYN (Internship)
                    Penn State Geisinger Medical Center
                    Danville, PA

8/4/97-6/30/00:     PGY 2-4 OB/GYN (Residency)
                    Mount Sinai School of Medicine
                    St. Joseph's Hospital and Medical Center
                    Paterson, NJ
                    Chief Resident Class of 2000

**Professional Experience:**

6/1/11- Present:    Heritage Provider Network IPA
                         Northridge, CA
                         Medical Management
                         OB/GYN Medical Director

3/1/08- Present:    Medical Board of California
                         Expert Reviewer
                         OB/GYN

10/15/07- Present:   Team Health/Delphi Healthcare Partners
                          OB/GYN Hospitalist
                          Lancaster, CA

10/23/06- Present:  -Serve as an Expert OB/GYN witness for:
                        *Consolidated Consultants Company
                        *ForensisGroup
                        *American Medical Forensic Specialists, Inc.
                        *The TASA Group
                        *Examworks

.

1/21/08- 1/9/09:   Planned Parenthood of Santa Barbara,
                         Ventura and San Luis Obispo Counties
                         Medical Director
                         Chief Medical Officer
                         Santa Barbara, CA

1/08/05- 1/31/08:   Assistant Professor
                         Obstetrics and Gynecology

University of Nevada School of Medicine
Las Vegas, NV

12/01/03- 11/30/05:  Private Practice
Las Vegas, NV

10/1/01-11/30/03:  Private Practice
Kendall/South Dade OB/GYN
Miami, FL

7/1/00-9/30/01:  Private Practice
Volusia/Flagler OB/GYN
Ormond Beach, FL

**Medical Licensure:** Florida -- ME77306         Nevada—10674(inactive)
California -- A66694         N.J.--MA67703 (inactive)
South Carolina—33359(inactive)  Ohio -- 81682 (inactive)

**Memberships:** *Fellow of the American College of Obstetricians and
Gynecologists
*Fellow of the American College Surgeons
*Diplomate of the American Board of Obstetrics and
Gynecology
*Diplomate of the National Board of Medical Examiners
*American College of Physician Executives

**Board Status:** Board Certified in Obstetrics and Gynecology: 11/7/2003
Current Certificate Expiration: 12/31/2015
Certificate # 9003029